# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

HOOR NAZ JAFRI, ROSLYN F. DOGAN,
SEDRA J. SIGNATER, ARTHUR SMITH, JR.,
KYEIANA E. MURRAY, ROBERT E. BOOKER,
AND JAMES J. MYER

CRIMINAL ACTION

NO. 12-73-BAJ-SCR

## RULING AND ORDER

Before the Court is a motion by the Government for a hearing as to defendants Hoor Naz Jafri ("Jafri"), Roslyn F. Dogan ("Dogan"), Sedra J. Signater ("Signater"), Arthur Smith, Jr. ("Smith"), and Kyeiana E. Murray ("Murray") (doc. 55). In accordance with *United States v. Garcia*, the Court conducted a hearing on July 18, 2012, during which the Court ordered the Government to file additional information, and continued the hearing to August 22, 2012. After the July 18, 2012, hearing, the Court referred the matter to the Federal Public Defender for the purpose of counseling the above-mentioned Defendants as to their rights to conflict-free counsel (doc. 93). The Government filed a supplemental brief (doc. 81), and Jafri, Murray, Smith, and Signater filed responses (docs. 84, 88, 91, and 95, respectively).

## BACKGROUND

On September 2, 2011, the Government initiated a civil action by the filing

of an application for a temporary restraining order to preserve funds in multiple accounts held by Psychcare of Louisiana, LLC, d/b/a Shifa Community Mental Health Center ("Shifa"), and Serenity Center, LLC ("Serenity"), two community mental health centers in Baton Rouge, and several of its owners (see case no. 11-CV-606-JJB). Following a hearing on the merits, the court denied the application for the temporary restraining order. At the hearing, numerous lawyers enrolled as counsel for the corporate entities and their owners.

The Government submits that on April 18, 2012, four former therapists from Shifa and Serenity plead guilty to a one-count bill of information and are all now cooperating with the Government (doc. 81, p. 3). The Government asserts that the therapists have "admitted the massive fraud that occurred at Shifa and Serenity and implicated each and every one of the current defendants" (doc. 81, p. 3).

**FACTS**

On April 25, 2012, the defendants in the above-captioned matter were indicted for various healthcare-fraud-related offenses (doc. 1). The indictment relates to defendants' employment at, and/or operation of, Shifa and Serenity. The Government asserts that several attorneys who have entered appearances for the defendants in this matter also appeared in the civil matter as counsel for the corporate entities. As such, the Government contends that "confidential

communications that were a part of the civil hearing remain likely to be relevant to the instant case given that the civil complaint grew out of the criminal investigation that led to this action" (doc. 81, p. 5).

The Government alleges that the following attorneys who have entered appearances for the present defendants also appeared in the civil matter:

1) Lewis Unglesby ("Unglesby") represented Jafri and Shifa at the civil hearing and has entered an appearance on behalf of Jafri in this matter.

2) John McLindon ("McLindon") represented Shifa, Serenity, and a part owner of both, Vincent Morella ("Morella"), at the civil hearing and has enrolled as counsel for Dogan in the present matter. The Government asserts that Murray was the office manager at Shifa, where Dogan was a manager, and that Murray "undoubtedly" attained information about Dogan's role at the companies, and vice versa.

3) MacAllynn Achee ("Achee") represented Dogan at the civil hearing and at her detention hearing in the present matter. However, he has now enrolled as counsel for Murray.

4) Andre Belanger, Ian Hipwell, and James Manasseh ("Belanger" or "Belanger, Hipwell, and Manasseh") represented Signater and Smith at the civil hearing and continued to represent them in the months leading up to the indictment. They have withdrawn from representing Signater and are currently

only representing Smith.

The Government asserts that both the appearance of, and potential for, a conflict exists with the representation of the above-mentioned Defendants and their currently enrolled counsel. The Government submits that all of the attorneys who participated in the civil hearing counsel took a "team-based approach," and it is therefore possible that the attorneys met with individuals in addition to those which they are supposed to represent.

At the hearing, the Court explained to each of the defendants the importance of conflict-free representation, and then engaged each defendant in a colloquy regarding the waiver of their Sixth Amendment rights to conflict-free counsel. The Court notes that each defendant made a knowing and voluntary waiver of their rights, and expressed interest in remaining with their current criminal counsel.

## APPLICABLE LAW

When a court learns of a potential conflict of interest, it must decide whether the conflict requires disqualification. *See Wheat v. United States*, 486 U.S. 153, 160 (1988); *In re American Airlines*, 972 F.2d 605, 611 (5thCir. 1992). To determine whether counsel must be disqualified, a court must balance the right to choose one's counsel and the need to comply with rules of professional responsibility. *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564-65 (2d Cir.

1973). A court has the discretion to refuse an individual's right to waive conflict-free counsel. *United States v. Newell*, 315 F.3d 510, 522 (5thCir. 2002), *citing Wheat*, 486 U.S. at 163. It has broad latitude in deciding whether to refuse such waivers in cases of either actual or potential conflicts. *See United States v. Sanchez Guerro*, 546 F.3d 328, 333 (5thCir. 2008), *citing Wheat*, 486 U.S. at 163).

However, waivers by affected defendants are not necessarily sufficient to cure all problems created by multiple defendants. The Supreme Court has explained that "[t]he Sixth Amendment right to choose ones own counsel is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Although there is a presumption in favor of a defendant's counsel of choice, that presumption may be overcome when the counsel of defendant's choice has either an actual conflict of interest or a serious potential conflict. Id. at 164. An "actual conflict of interest" occurs "when an attorney represents two clients whose interests in the outcome of a matter are different." *Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996). Such a conflict arises "when one client would benefit by a person testifying and one client would be harmed by it." *Id.*

In *Holloway v. Arkansas*, the Supreme Court addressed the types of potential conflicts serious enough to warrant a disqualification of counsel in spite

5

of a defendant's waiver. 435 U.S. 475, 489-90 (1978). The Court suggested that district courts should be leery of joint representation of conflicting interests "because of what it tends to prevent the attorney from doing." The Court wrote that it could deter defense counsel for one of the two defendants "from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or favorable sentencing recommendation would be acceptable." *Id.* at 490. The Court continued,

> Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

*Id.* Joint representation of conflicting interests is also suspect because it tends to prevent an attorney from challenging the admissibility of evidence favorable to one client but perhaps not the other, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of the other. *Wheat*, 486 U.S. at 159.

Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession. When a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented.

6

*Id.* at 160.

Pursuant to the Sixth Amendment right to conflict-free counsel, the court is required to determine on the record that a defendant knowingly, intelligently, and voluntarily waived his right to conflict-free counsel. *United States v. Placente*, 81 F.3d 555, 560 (5thCir. 1996). To ascertain whether a defendant is entering into a knowing, intelligent, and voluntary waiver, the Court must ensure that the defendant is: (1) aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel. *Id.* In *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), the Fifth Circuit prescribed the following procedure which lower courts within this circuit must follow:

> [T]he district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*Id.*

## DISCUSSION

### I. Dogan[1]

Dogan retained McLindon to represent her. McLindon represented Shifa, Serenity (the company she co-owned and co-managed with Morella), and Morella (the co-owner of Shifa and Serenity) at the civil hearing. Pursuant to the Court's order, Dogan met with Joseph Scott ("Scott"), her CJA-appointed attorney, who advised her of her right to conflict-free counsel. Dogan maintains that no conflict exists despite McLindon's prior representation of Shifa, Serenity, and Morella in the civil hearing because neither Shifa, Serenity, nor Morella have been charged in the present case (doc. 72, p. 2). Dogan submits that she retained McLindon with "full knowledge" that he represented the companies and Morella in the civil case (doc. 72, p. 2). Moreover, Morella was never a defendant in the civil proceeding, and will consent to McLindon's representation of Dogan (doc. 100, p. 2-3).

The Government asserts that this conflict is not waivable, as Morella could be called as a witness at trial, or indicted as a defendant in another case (doc. 81, p. 7). The Government further asserts that, as co-owner of Serenity

---

[1] The Court notes that Dogan's attorney in the civil proceeding, Achee, is currently enrolled on behalf of her co-defendant, Murray. The Court will discuss this issue, *infra*.

and manager at Shifa, Dogan may have information about Morella and/or Shifa that would strengthen her defense or ability to cooperate, and, therefore, the conflict exists whether or not Morella is charged in the future.

At the hearing, Scott argued that the purported conflict is not yet real, and McLindon agreed. McLindon asserted that the Government does not have any information as to what he discussed with Morella, and that he did not discuss any legal strategies with Morella. McLindon further asserted that he only met with Morella three times, spoke with him on the telephone sporadically, and has not represented Morella since the conclusion of the civil case–nearly one year ago. McLindon asserted that he would have no trouble cross-examining Morella, and asserted he would ask Morella "anything."

Both Scott and McLindon agreed that Dogan should be entitled to counsel of her choice, and the Court concludes that the potential for a conflict that would disqualify McLindon is speculative, at best. The Court will accept Dogan's waiver as knowing, voluntary, and intelligent. As such, the Court finds that McLindon should not be disqualified from representing Dogan.

II. **Jafri**

Jafri retained Unglesby to represent her. Unglesby represented Jafri and Shifa at the civil hearing. Pursuant to the Court's order, Jafri met with Mark Upton ("Upton"), her CJA-appointed attorney, who advised her regarding her

right to conflict-free counsel. After meeting with Jafri, Upton filed a brief stating that "it is not clear at all that any conflict, either potential or actual, exists in the representation of this defendant by Mr. Unglesby" (doc. 92, p. 2). At the hearing, Upton argued that Jafri could make a knowing and intelligent waiver.

The Government asserts that a waivable conflict exists as to Jafri because Unglesby may have learned confidential information from co-defendants or witnesses due to the team-based approach the defense attorneys engaged in at the civil hearing. The Court agrees that any such conflict is waivable. The Government fears that co-defendants and/or witnesses may have shared confidences with Unglesby based on the belief that he represented them and/or the company, which could harm Jafri.

For the reasons submitted in Upton's brief, and the discussion had with Unglesbly *in camera*, the Court will accept Jafri's waiver as knowing, voluntary, and intelligent. As such, the Court concludes that Unglesby will not be disqualified from representing Jafri in this matter.

### III. Murray

Murray retained Achee to represent her. Achee represented Dogan at the civil hearing. Pursuant to the Court's order, Murray met with David Rozas ("Rozas"), her CJA-appointed attorney, who advised her regarding her right to conflict-free counsel. Murray maintains that no conflict exists despite Achee's

prior representation of her co-defendant and supervisor, Dogan.

The Government submits that Achee also represented Dogan at the detention hearing on May 3, 2012, and subsequently enrolled as counsel for Murray on May 18, 2012. The Government avers that Murray was the office manager at Shifa, where Dogan was a manager. The Government alleges that the cooperating witnesses have revealed that Murray coordinated the falsification of group notes by collecting and distributing patient charts to be falsified at Shifa and brought notes from Serenity to Shifa. The Government further asserts that Murray "undoubtedly" attained information about Dogan's role at the companies (and vice versa). The Government further contends that Murray indicated that she wished to be appointed a public defender when law enforcement contacted her to inform her that she was the target of an investigation. (Doc. 81, p. 6).

At the hearing, Achee asserted that Murray was a "$14.00 per hour" employee at Shifa, and, therefore, was not involved in the civil hearing. In her brief, Murray argues that Achee's contact with Dogan was "limited," as his role was to analyze billing sheets and other documentation that was seized from Shifa and Serenity by the FBI during the investigation that led to the filing of the civil complaint (doc. 88, p. 2). Moreover, Achee stated that he had "never heard" of Murray prior to her 5(a) hearing because she was not a witness at the

civil hearing, nor was she present or named in the proceedings. (*Id*). Achee further asserts that he has "copiously" reviewed all of his notes and "cannot perceive of a potential conflict of interest between Dogan and Murray."

At the hearing, Achee argued that a conflict cannot exist upon mere speculation, and the Court agrees. However, a serious potential conflict is sufficient grounds for disqualification of an attorney, and overcomes the presumption in favor of defendant's choice of counsel. *Wheat*, 486 U.S. at 164. "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id*.

The Court finds that the Achee's prior representation of Dogan and current representation of Murray create a serious potential conflict similar to those outlined by the Court in *Holloway*. *See* 435 U.S. 475. Dogan was Murray's supervisor at Shifa, where Murray allegedly "coordinated the falsficiation of group notes." The information Murray may have obtained about her co-defendant Dogan in her role as office manager at Shifa is potentially useful in this case.[2] The potential for Murray and Dogan to have conflicting interests as co-defendants in this case is readily apparent, particularly when one considers

---

[2] Murray and Dogan's professional relationship set them apart from their co-defendants Smith and Signater, who have also been represented by the same attorney(s) at prior stages of this proceeding. Unlike Murray and Dogan, Smith and Signater did not work together on a daily basis, but had only a personal relationship.

the information both parties may have obtained, as stated earlier. The Court in *Holloway* instructed district courts to be leery of joint representation of conflicting interests "because of what it tends to prevent the attorney from doing." 435 U.S. at 489-90. At this stage in the proceeding, it's impractical for the Court to state with precision what conflict will arise with Achee's representation of both Dogan and Murray during this criminal proceeding. The Supreme Court itself has acknowledged that it can be difficult, even at the appeals stage, "to judge intelligently the impact of a conflict on the attorney's representation of a client." *Id.* at 491. "And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible." *Id.* Achee's former representation of Dogan in this proceeding therefore gives rise to the potential for a serious conflict with his current representation of Murray. Accordingly, Achee is disqualified from representing Murray in this matter, despite Murray's waiver of her right to conflict-free counsel given during the *Garcia* hearing. The Court further orders Murray to obtain new counsel not previously associated with the current criminal matter or the related civil matter.

### IV. Smith

Smith retained Belanger, Hipwell, and Manasseh to represent him. Belanger represented Smith and his co-defendant, Signater, at the initial

13

appearance, through the indictment phase of the present matter. Pursuant to the Court's order, Smith met with Joseph Rodney Messina ("Messina"), his CJA-appointed attorney, who advised him regarding his right to conflict-free counsel.

The Government asserts that "as friends, co-workers, and similarly situated employees, Smith and Signater are each in a position to provide information that would harm the other." Smith was an administrator and activity therapist at Serenity. The Government asserts that he was personally responsible for falsifying group notes and supervising the entire facility. The Government further asserts that Smith and Signater were good friends and spent many afternoons at Shifa (where Signater was the administrator). (Doc. 81, pp. 6-7).

Smith asserts that his counsel no longer represents Signater, and, therefore, does not believe that a conflict exists. Smith submits that any joint representation occurred in the pre-indictment phase of the case, only. Also, none of the acts referenced in the indictment indicate that Smith and Signater participated in the same act. (Doc. 91, p. 2).

At the hearing, Belanger argued that he and his colleagues do not have any information from either defendant that would implicate the other, and that they would not continue to represent Smith if they had such information. Morever, Belanger noted that, because the discovery phase of the case has not

14

yet occurred, very little information has been gathered at this time. Messina argued that he does not believe there is a conflict of interest, and both Smith and Signater waived their right to conflict-free counsel at the *Garcia* hearing on August 22, 2012.

Messina, Belanger, Hipwell, and Manasseh agreed that Smith should be entitled to counsel of his choice, and the Court agrees. The Court finds that Signater's contact with Belanger, Hipwell, and Manasseh was so limited as to eliminate any potential joint representation conflict of interest. Furthermore, the relationship between Smith and his co-defendant, Signater, was not as close as defendants Murray and Dogan. Smith was employed as an administrator for Serenity, while Smith worked in a similar role at Shifa. They did not work together as Dogan and Murray did, and therefore the risk for a serious potential conflict is significantly lower. As such, the Court will accept Smith's waiver as knowing, voluntary, and intelligent. Accordingly, the Court concludes that Belanger, Hipwell, and Manasseh will not be disqualified from representing Smith.

### V. Signater

On July 27, 2012, Lindsey Leavoy ("Leavoy") and Philip Pitzer ("Pitzer") enrolled on behalf of Signater. The record of the civil action reflects that neither attorney was previously involved in the civil case or the present matter.

Moreover, the Government withdrew its motion for a *Garcia* hearing with respect to Signater's current representation.

However, the Government asserts that Signater would have to enter a waiver to allow Belanger to continue his representation of Smith. The Court notes that Signater executed such waiver, and it was filed into the record at the August 22, 2012, hearing.

## CONCLUSION AND ORDER

For the foregoing reasons, **IT IS ORDERED** that the attorneys for Dogan, Jafri, Smith, and Signater will not be disqualified.

**IT IS FURTHER ORDERED** that Achee is disqualified from representing Murray in this matter, and Murray must obtain new counsel not previously associated with this matter or the related civil matter.

Baton Rouge, Louisiana, September 14, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA